**UNITED STATES of America**

v.

**Donald Wayne SMITH, Jr.**

**No. 1:95–CR–133.**

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 4, 1996.

---

Keith Giblin, Beaumont, TX, Asst. U.S. Attorney, for plaintiff.

Benjamin Durant, Houston, TX, for defendant.

## MEMORANDUM OPINION DENYING MOTION TO SUPPRESS

COBB, District Judge.

■ Before the Court is defendant Donald Smith's Motion to Suppress. Defendant contends that Beaumont Police Officer Ky Brown seized a shotgun in defendant's vehicle in violation of the Fourth[1] and Fourteenth Amendments. After conducting an evidentiary hearing on the matter, this Court found that the evidence was lawfully obtained and DENIED defendant's motion. The Court finds it appropriate to assign written reasons in support of its oral order denying defendant's motion. Therefore, this memorandum opinion in support of the court's oral order announced from the bench shall be entered *nunc pro tunc* as of December 19, 1995.

1. The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const.Amend. IV. Evidence obtained by the government in violation of a defendant's Fourth Amendment rights may not be used to prove his guilt at trial. *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914).

2. The initial stop was valid under *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In *Terry*, the Supreme Court held that a dual inquiry must be made to determine whether a search and seizure is reasonable. *Terry*, 392 U.S. at 19, 88 S.Ct. at 1879. First, the officer's action must be justified at its inception. *Id.* As long as the officer had a legitimate basis for stopping the defendant, the stop does not violate the Fourth Amendment. *Id.; see also United States v. Roberson*, 6 F.3d 1088, 1092 (5th Cir.1993).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ On April 15, 1995, Officer Brown, while in a nearby area investigating a report of recent gunshots, responded to a fellow officer's request for assistance. Specifically, the fellow officer had received information from a citizen that there was drug-activity occurring at a local car wash.

■ When Officer Brown approached the area with his fellow officer, he confronted approximately one dozen males at the car wash. The officers made a valid investigative stop of these individuals amassed at the car wash. When officers are conducting a permissible stop, they "may check for weapons and may take any additional steps 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 683–84, 83 L.Ed.2d 604 (1985).

■ Given that a gun had been reportedly discharged in the area and as part of the standard procedure when confronted with such a large group at night in a renowned area of drug-dealing, Officer Brown asked if anyone in the group had a weapon.[2]

Donald Smith responded he had a shotgun in his vehicle. The vehicle's door was open

Second, the actions must be reasonably related in scope to the circumstances. *Id.; see United States v. Kelley*, 981 F.2d 1464 (5th Cir.), *cert. denied*, 508 U.S. 944, 113 S.Ct. 2427, 124 L.Ed.2d 647 (1992). The scope of questioning after a stop must also be reasonable. *Id.* at 1470. *Kelley*, however, also held that "under appropriate circumstances, extensive questioning about matters wholly unrelated to the purpose of a routine traffic stop may violate the Fourth Amendment." *Id.* Asking whether anyone had possession of a weapon certainly was not a flight of fancy. It was a prudent and legitimate question to secure the safety of the officers and the public generally.

An investigative detention must be temporary and last no longer than necessary to effectuate the initial purpose of the stop. *United States v. Sharpe*, 470 U.S. 675, 681–684, 105 S.Ct. 1568, 1573–74, 84 L.Ed.2d 605 (1985). This investigative stop was not excessive in duration.

and just a few feet away from where the defendant was standing.[3] The defendant then said he would retrieve the weapon for the officers. Officer Brown told the defendant that he would obtain the weapon himself. Clearly, Officer Brown had a reasonable belief that the defendant or some other individual could easily gain control over the shotgun, and as such was justified in retrieving the shotgun. *United States v. Thomas,* 992 F.2d 201, 203–04 (8th Cir.1993).

Officer Brown then stepped into the vehicle and immediately retrieved the weapon. Later, the officer gave the defendant a receipt for the weapon which he was to bring to the police station the next business day to retrieve his property.

In this case both the seizure of the shotgun and the *Terry* stop preceding the seizure were permissible. In the case at bar, the individuals at the car wash were stopped, if at all, for investigatory purposes. This is a valid stop under *Terry.* Officer Brown testified that he was apprehensive given the danger of the area, the number of able-bodied men in the area, and the fact that everyone in the immediate area knew that a shotgun was being kept in an open vehicle.

For the foregoing reasons and in accordance with the Court's previous order, this Court finds that defendant's Motion to Suppress the shotgun seized by Officer Brown is DENIED.

---

**3.** The defendant testified at the suppression hearing that he could have grabbed the weapon in approximately three seconds had he so chosen.