No. 95-3182

United States of America,     *
                                      *
          Appellee,           *
                                        *      Appeal from the United States
     v.                           *      District Court for the
                                        *      Southern District of Iowa.
Armon Fennel Diggs,         *
                                       *
         Appellant.         *

Submitted: January 9, 1996

File: April 23, 1996

Before WOLLMAN, CAMPBELL,[*] and MURPHY, Circuit Judges.

WOLLMAN, Circuit Judge.

After a jury found Armon Fennel Diggs guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), the district court[1] sentenced him to 303 months' imprisonment and three years' supervised release. Diggs appeals his conviction and sentence. We affirm.

## I. Background

On August 1, 1993, Jermaine Etier invited Diggs to attend a dice game in their Des Moines neighborhood. Diggs took his thirteen-year-old son, Armon, Jr., to the game, which was held at Shylow Thompson's house. During the course of the game, Diggs was

---

[*]The HONORABLE LEVIN H. CAMPBELL, United States Circuit Judge for the First Circuit, sitting by designation.

[1]The Honorable Harold Vietor, United States District Judge for the Southern District of Iowa.

robbed by one of the participants.  Diggs escaped through an open window and ran home.  Armon, Jr. ran out the front door but later returned to the house.  In the confusion, Diggs lost track of his son.

Not surprisingly, the record contains conflicting accounts of the events that followed.  According to Diggs, his son called him at home and asked him to come back to the house to pick him up.  Diggs then called his cousin, Brother Billy Jackson, and asked him for a ride to Thompson's house.  On the ride over, Jackson told Diggs that he had previously had trouble with Thompson and that he had two guns in the car.  Diggs testified that he knew that several of the participants in the dice game were gang members.

Upon arriving at the house, Diggs noticed a group of men gathered on the porch and had Jackson park the car a short distance away.  Diggs called for Armon, Jr. from the car and got out of the car as his son moved toward him.  At this point, several members of the group also moved toward the car.  According to Diggs, only then did he accept a gun from Jackson.  The government, however, introduced testimony given by Diggs during the state criminal proceeding arising from these events suggesting that he had possession of the gun before he called for his son and prior to exiting the car.

In any event, Diggs, Jackson, and Armon, Jr. ran away from the house after words were exchanged between Diggs and some members of the group.  Three of the individuals from the group -- Jermaine Etier, Alonzo Hickman, and Michael Ruffin -- followed them.  Eventually, Diggs, Jackson, Etier, and Hickman ended up in a parking lot.  Diggs attempted to flee but stopped after Jackson called for his help.  Diggs testified that he saw Hickman shooting at Jackson while Jackson was struggling with Etier over a shotgun.  During the struggle, the shotgun discharged.  Diggs believed that Hickman had either shot him or was about to do so, whereupon he

then fired his gun, killing Jackson and Etier.  Diggs then fled the scene.

Diggs was charged with murder in Iowa state court.  The jury found him guilty of one count of voluntary manslaughter and one count of involuntary manslaughter.  He was sentenced to five- and ten-year terms, to be served concurrently.  The United States then charged Diggs with being a felon in possession of a firearm based on the facts established in the state court proceeding.  Diggs asserted a justification defense.  After a jury found Diggs guilty of being a felon in possession, the district court found that Diggs was an armed career criminal under the provisions of 18 U.S.C. § 924(e)(1) and enhanced his sentence accordingly.  The court denied Diggs a sentence reduction for acceptance of responsibility.

## II.  Evidence of Prior Convictions

Diggs first argues that the district court erred in allowing the government to introduce evidence of three of Diggs' prior felonies at trial inasmuch as only one conviction is needed to show a section 922(g) violation and Diggs had stipulated to one prior conviction.

In addition to stipulating to one prior felony conviction, Diggs also offered to stipulate to the foundation of two additional felony convictions but objected to the admissibility of these convictions, claiming undue prejudice.  The district court ruled that the government would be allowed to introduce evidence of all three convictions.

It is well established in this circuit that the government is not required to accept a defendant's stipulation to a prior felony conviction in lieu of introducing evidence on that element at

trial.  United States v. Franik, 7 F.3d 811, 813 (8th Cir. 1993).[2]  Diggs attempts to circumvent this rule by claiming that because the government accepted his stipulation to being a convicted felon, it should have been precluded from introducing evidence regarding his prior felonies.  We do not agree.  First, the record contains no evidence that the government agreed to the admission of only one felony.  In fact, the government explicitly stated that acceptance of the stipulations was conditional on the district court's ruling that all three would be admitted.  Moreover, we have repeatedly held that "[i]t is not error to allow the government to introduce more than one conviction in a case where only a single conviction is necessary to make the case."  United States v. Garner, 32 F.3d 1305, 1311 (8th Cir. 1994) (citing United States v. Blade, 811 F.2d 461, 466 (8th Cir.), cert. denied, 484 U.S. 839 (1987)), cert. denied, 115 S. Ct. 1366 (1995).

The government offered evidence of the three prior felonies to establish a necessary element of the offense charged.  By stipulation of the parties, the government introduced certified records citing the date, jurisdiction, and type of offense for each of the convictions.  The government did not introduce any additional evidence regarding the circumstances underlying the convictions.  Thus, in light of the controlling law in this circuit and the manner in which the evidence was presented, we conclude that the district court did not err in admitting evidence of Diggs' prior felony convictions.  See Blade, 811 F.2d at 466.

### III.  Expert Testimony

Diggs next contends that the district court erred in refusing

---

[2]We note that the Supreme Court has recently granted certiorari on the question whether the government should be required to accept a stipulation as to status as a felon.  Old Chief v. United States, No. 94-30277 (9th Cir. May 31, 1995), cert. granted, 64 U.S.L.W. 3545 (U.S. Feb. 20, 1996) (No. 95-6556).

to allow expert testimony relating to his justification defense. Diggs sought to introduce testimony from Dr. Richard Majors and Dr. William Oliver. Dr. Majors has a Ph.D. in psychology and specializes in psychosocial development of the black male; Dr. Oliver is a criminologist specializing in urban violence. Diggs claims that his proffered expert testimony would have "set the stage" for the events underlying his conviction, assisting the jury in understanding the threat perceived by him when he was confronted by gang members who were holding his son.

We agree with the district court's conclusion that the jury could determine without the aid of expert testimony whether Diggs was justified in possessing the gun in light of the facts and circumstances surrounding the incident. As we have previously held, "`[w]here the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous.'" United States v. French, 12 F.3d 114, 116 (8th Cir. 1993) (quoting Bartak v. Bell-Galyardt & Wells, Inc., 629 F.2d 523, 530 (8th Cir. 1980)). In this case, the jury was as competent as the experts in perceiving the situation confronting Diggs. See Zimmer v. Miller Trucking Co., 743 F.2d 601, 604 (8th Cir. 1984) (upholding exclusion of police officer's testimony regarding existence of roadside emergency because jurors were as proficient as officer in determining whether emergency existed). The district court therefore did not abuse its discretion in excluding the proffered testimony.

## IV. Prosecutorial Misconduct

Diggs contends that the prosecutor improperly questioned him about his parole status and improperly suggested that Diggs had possession of the gun before he got out of the car and before he had called for his son. We conclude that these incidents did not amount to prosecutorial misconduct. Diggs voluntarily stated that he was on parole in a response to a question from the prosecutor

regarding his work status.  With respect to the gun-possession testimony, the prosecutor merely questioned Diggs about the differences between his testimony in the state trial and that which he gave in the federal case.

Diggs also argues that the prosecutor improperly told the jury in his closing argument that the gun Diggs possessed had to be cocked before it could be shot, despite the fact that there was no evidence in the record to support the statement.  Because Diggs' attorney failed to object to the statement, however, we review this claim for plain error only.  <u>United States v. Skarda</u>, 845 F.2d 1508, 1511 (8th Cir. 1988).

Although this statement by the prosecutor may arguably have been improper, we find that the remark was not so prejudicial as to deprive Diggs of a fair trial.  The prosecutor did not repeat or make further reference to this remark.  Moreover, the court instructed the jury that statements by counsel were not to be considered as evidence.  Thus, we find that the remark did not prejudicially affect Diggs' substantive rights.  <u>See</u> <u>id.</u> at 1511; <u>United States v. Hernandez</u>, 779 F.2d 456, 461 (8th Cir. 1985) (improper remarks by prosecutor not prejudicial when remarks were not repeated, ample evidence of defendant's guilt was shown, and court took proper remedial action).

## V.  <u>Batson</u> Claim

Diggs also contends that the government improperly used a peremptory strike to remove the sole black juror in the jury pool in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).  The government stated that it had struck the juror because he failed to return to the courthouse for the remaining jury selection process after the midmorning recess.  In addition, the government cited the juror's connection with a business that had been criminally prosecuted and his inattentiveness in the courtroom.  The district

court also noted that during the jury selection process the juror "held his head in his hand.  He had his eyes closed.  He communicated to me an attitude of boredom and indifference."

A district court's determination on a <u>Batson</u> challenge is reviewed for clear error.  <u>United States v. Carr</u>, 67 F.3d 171, 175 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1285 (1996).  We conclude that the district court did not err in finding that the government had valid reasons to dismiss the juror.  <u>See</u> <u>United States v. Logan</u>, 49 F.3d 352, 357-58 (8th Cir. 1995) (finding no <u>Batson</u> violation when government struck black juror because she was inattentive and evasive during jury selection process).

## VI.  Sentencing

Diggs also contends that the district court erred in enhancing his sentence and in refusing to grant him a reduction for acceptance of responsibility.

## A.  Armed Career Criminal Enhancement

Under section 924(e)(1), an offender who violates section 922(g) and has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to enhanced penalties, including a mandatory minimum sentence of fifteen years.  18 U.S.C. § 924(e)(1).  The district court found that Diggs had committed the requisite felonies and enhanced his sentence accordingly.

The felonies relied on by the district court included two convictions for burglary occurring in 1981 and 1982 and a 1982 conviction for assault on a federal officer.  Diggs claims that the 1982 convictions arose out of the same transaction and were part of the same criminal scheme.  This argument is meritless.  "Section 924(e) does not require separate prosecutions, just that the

-7-

offenses occurred at different times." United States v. Gibson, 928 F.3d 250, 254 (8th Cir. 1991). The Presentence Investigation Report shows that the burglary occurred on February 14, 1982, and the assault occurred on February 16, 1982. These were clearly separate felonies for section 924(e)(1) enhancement purposes.

**B. Acceptance of Responsibility**

Diggs claims that the district court should have granted him a two-level sentence reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. A district court's determination denying a defendant a sentence reduction for acceptance of responsibility is reviewed for clear error. United States v. Farmer, 32 F.3d 369, 372 (8th Cir. 1994).

Diggs argues that he was entitled to the reduction because he admitted that he possessed the gun and that he was a convicted felon. Voluntarily admitting involvement in the offense charged does not automatically entitle a defendant to a reduction for acceptance of responsibility. United States v. Davila, 964 F.2d 778, 784 (8th Cir.), cert. denied, 506 U.S. 964 (1992). In United States v. Patterson, 885 F.2d 483, 485 (8th Cir. 1989), we held that no acceptance-of-responsibility reduction was warranted for a defendant who admitted to being a felon in possession of a firearm but claimed that his conduct should be excused because he carried the gun for his own protection. See also United States v. Newson, 46 F.3d 730, 734 (8th Cir. 1995) (denying acceptance-of-responsibility reduction for defendant who admitted his role in the offense charged but claimed that he had been entrapped). We conclude that the district court did not err in finding that Diggs' claim that he was justified in possessing the gun reflected a failure to clearly accept responsibility.

The conviction and sentence are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.